129 N.J. Super. 37 (1974)
322 A.2d 190
BERNARD GARLINGER, PLAINTIFF,
v.
JOYCE GARLINGER, DEFENDANT.
Superior Court of New Jersey, Chancery Division.
Decided May 31, 1974.
*38 Mr. Monroe Ackerman for plaintiff (Messrs. Rudd & Ackerman, attorneys; Mr. Neil Braun on the brief).
Mr. Gary Skoloff for defendant (Messrs. Skoloff & Wolfe, attorneys).
CONSODINE, J.S.C.
Judgment of divorce incorporated a settlement agreement awarding alimony, child support and amortization, taxes and interest on the marital home where defendant was to reside with the parties' child until graduation from high school.
Subsequently a married man moved into the marital home. Plaintiff made a motion to eliminate alimony and sell the home. Defendant cross-motioned for specific performance. Testimony was taken. At the hearing it was admitted that the paramour lived with defendant for several months and while the child was in the house, that he and defendant engaged in sexual intercourse, that he made no payment for *39 room or board and that he moved out after the filing of the notice of motion.
The question is: Is it consistent with the purpose of alimony as defined by our statutes and cases, with justice and with public policy and morality for the husband to continue to pay alimony under these circumstances?
Alimony is the periodic allowance from the husband's income payable to the former wife for her maintenance, as fixed from time to time by the court according to the varying circumstances of the parties. Herman v. Herman, 17 N.J. Misc. 127, 5 A. 2d 768 (Ch. 1939). The distinct objective of alimony is the proper support of the wife, and the wife is not entitled to have more from the husband. O'Neill v. O'Neill, 18 N.J. Misc. 82, 11 A.2d 128 (Ch. 1940). Alimony is not intended to punish or reward a spouse. Turi v. Turi, 34 N.J. Super. 313 (App. Div. 1955).
In our State pertinent law was set forth in Suozzo v. Suozzo, 16 N.J. Misc. 475, 1 A.2d 930 (Ch. 1938), which held that post-marital unchastity by an ex-wife is not automatically a bar to her right to alimony. She does not owe a duty of chastity to her ex-husband, nor he to her. However, the ex-husband is not required, as the O'Neill and Herman cases make plain, to pay for the support of one who fornicates or commits adultery with her. Thus, under Suozzo the ex-husband may realize a modification in the amount of alimony. Cf. Grossman v. Grossman, 128 N.J. Super. 193 (Ch. Div. 1974).
Other jurisdictions are divided as to whether gross misconduct by the ex-wife after entry of judgment may in itself justify a reduction or termination of alimony. Compare Stanfield v. Stanfield, 22 Okl. 574, 98 P. 334 (Sup. Ct. 1908); Cariens v. Cariens, 50 W. Va. 113, 40 S.E. 335 (Sup. Ct. 1901); Lott v. Lott, 213 Ga. 559, 100 S.E.2d 170 (Sup. Ct. 1959), and Bowman v. Bowman, 163 Neb. 336, 79 N.W.2d 554 (Sup. Ct. 1956) (holding no); with Coggins v. Coggins, 289 Ky. 570, 159 S.W.2d 4 (Ct. App. 1942); Martens v. Martens, 211 Minn. 369, 1 N.W.2d 356 (Sup. *40 Ct. 1941); Rubisoff v. Rubisoff, 242 Miss. 225, 133 So.2d 534 (Sup. Ct. 1961); Rand v. Rand, 56 Misc.2d 997, 290 N.Y.S.2d 795 (Family Ct. 1968), and Weber v. Weber, 153 Wis. 132, 140 N.W. 1052 (Sup. Ct. 1913) (holding yes).
The rationale underlying the latter view is that it is unconscionable to compel a husband by his daily labor to support the divorced wife in idleness and immorality. Reasons of justice justify the court in such a case in exercising its general chancery powers, to modify or revoke its former order. Cole v. Cole, 142 Ill. 19, 31 N.E. 109 (Sup. Ct. 1892). The rationale has great force.
The fact that immoral conduct occurs in the home where child or children are present must also be considered. Gotthelf v. Gotthelf, 38 Ariz. 369, 300 P. 186 (Sup. Ct. 1931); Benjamin v. Benjamin, 78 Fla. 14, 82 So. 597 (Sup. Ct. 1919); Otani v. Otani, 29 Hawaii, 866 (Sup. Ct. 1927); Armstrong v. Armstrong, 395 S.W.2d 484 (Mo. App. 1965). It is a factor here.
Finally, a court of equity will not enforce specific performance of a contract where, from a change of circumstances or otherwise, it would be unconscionable to enforce it. Schiff v. Schiff, 116 N.J. Super. 546 (App. Div. 1971). It is well settled that specific performance of a contract will not be decreed if the specific performance to be compelled is contrary to public policy. Restatement, Contracts, § 369 at 671 (1932). Cf. Id. §§ 512, 598, 600, 602.
In New Jersey cohabitation without benefit of marriage is contrary to public policy. Weiner v. Weiner, 120 N.J. Super. 36 (Ch. Div. 1972). Furthermore, fornication is a crime. N.J.S.A. 2A:110-1, as is adultery. N.J.S.A. 2A:88-1.
An agreement is against public policy if it is injurious to the interest of the public, contravenes some established interest of society, violates some public statute, is against good morals, tends to interfere with the public welfare or safety, or, as it is sometimes put, if it is at war with the interests of society and is in conflict with public morals. 17 Am. Jur.2d, *41 Contracts, § 179 at 541. The enforcement of contracts clearly repugnant to sound morality will generally be denied. Veazey v. Allen, 173 N.Y. 359, 66 N.E. 103 (Ct. App. 1903). To compel the ex-husband to contribute to his exwife's support would be, under the circumstances, to use the authority and power of this court to encourage crime and subsidize immorality.
The alimony payable to defendant is suspended from the first week of November 1973  the date of the commencement of cohabitation  until further order of the court; the marital home will be sold now rather than in June 1975; child support is continued; the Probation Department will investigate and report on the well-being of the child, and a future hearing will be held in that regard.